**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BETTY J. FARIZER,<br><br>Plaintiff,<br><br>v.<br><br>CORINTHIAN MORTGAGE CORPORATION d/b/a SOUTHBANC MORTGAGE,<br><br>Defendant. | ) | C.A. No. 06-338-T |

**CORINTHIAN MORTGAGE CORPORATION'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, Fed.R.Civ.P. 12(c), Defendant, Corinthian Mortgage Corporation, respectfully requests that this Court dismiss Plaintiff's amended complaint for the reasons set forth in its Memorandum of Law filed contemporaneously herewith.

Dated: May 22, 2007

DEFENDANT
By its attorneys,

/s/ Patricia K. Rocha

John A. Tarantino, #2586
jtarantino@apslaw.com
Patricia K. Rocha, #2793
procha@apslaw.com
Katy A. Hynes, #6659
khynes@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: 401-274-7200
Fax: 401-351-4607

**DEFENDANT REQUESTS ORAL ARGUMENT WITH ESTIMATED TIME OF 15 MINUTES**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BETTY J. FARIZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-338-T |
| | ) | |
| CORINTHIAN MORTGAGE CORPORATION d/b/a SOUTHBANC MORTGAGE, | ) | |
| | ) | |
| Defendant. | ) | |

**CORINTHIAN MORTGAGE CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS OR, ALTERNATIVELY, FOR JUDGMENT ON THE PLEADINGS**

Defendant Corinthian Mortgage Corporation ("Corinthian") respectfully submits this memorandum in support of its motion to dismiss Plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, alternatively, motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## I. BACKGROUND

Plaintiff brings this putative class action based upon her conclusory allegation that defendant Corinthian committed a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. Plaintiff's amended complaint is part of a wave of FCRA class action claims founded upon a misapplication of Seventh Circuit law winding their way through courts across the country. As explained in detail below, Plaintiff's claim is without merit and should be dismissed.

## II. LEGAL STANDARD

In considering a motion to dismiss, the Court is to "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *TAG/ICIB Servs., Inc. v. Pan American Grain Co., Inc.*, 215 F.3d 172, 175 (1st Cir. 2000). While the Court should take well-pleaded factual allegations as true, it "need not credit the complaint's 'bald assertions' or legal conclusions." *Abbott v. United States*, 144 F.3d 1, 2 (1st Cir. 1998). The Court may properly consider documents attached to, integral to, or relied upon in the complaint. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

Alternatively, "[a] defense of failure to state a claim upon which relief can be granted … may be made … by motion for judgment on the pleadings." FED. R. CIV. P. 12(h)(2). "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005).

## III. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Corinthian obtained credit information on Plaintiff without her consent and used this information to send her a mailer. *See* Am. Compl. at ¶¶ 11-14 & 22-23. The mailer Corinthian sent to Plaintiff is attached to the amended complaint. *See id.* at Ex. A.[1] Plaintiff alleges that Corinthian violated the FCRA because the offer in its mailer does not constitute a "firm offer of credit." *See id.* at ¶¶ 27-31. According to Plaintiff, the offer made in

---

[1] Exhibit A to Plaintiff's amended complaint was only the front of a two-sided document. In an unopposed motion, Plaintiff substituted a new Exhibit A that contains both the front and back of the mailer. *See* Doc. No. 7. For the Court's convenience, a copy of this substituted Exhibit A is also attached hereto as Exhibit A.

Corinthian's mailer "is a sham, excessively vague and totally lacking in terms" and "has no value beyond a solicitation for business." *Id.* at ¶ 31. As a result, Plaintiff claims that Corinthian "willfully violated the FCRA." *Id.* at ¶ 33.

Plaintiff purports to bring this action on behalf of other Rhode Island and Massachusetts residents who also received Corinthian's mailer. *See* Am. Compl. at ¶ 36-43. She seeks statutory damages, injunctive relief, attorney's fees, and costs. *See id*. (Demand For Relief).

## IV. ARGUMENT

### A. THE FCRA PERMITS LENDERS TO ACCESS CREDIT INFORMATION IN CONNECTION WITH A TRANSACTION CONSISTING OF A "FIRM OFFER OF CREDIT."

The FCRA expressly *permits* lenders, such as Corinthian, to gain access to limited consumer credit information[2] without the consumer's prior consent in connection with a "transaction consisting of a firm offer of credit…." 15 U.S.C. § 1681b(c)(1)(B)(i). A "firm offer of credit" is defined in the FCRA as "any offer of credit … to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on one or more" of three conditions. 15 U.S.C. § 1681a(l). *See also Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004) (explaining that a "firm offer of credit" is conditional in nature). First, a lender may condition the offer on additional pre-established criteria bearing on the consumer's creditworthiness. *See* 15 U.S.C.

[2] In the absence of a consumer's consent, a lender may obtain the following limited information in connection with a firm offer of credit transaction:

(A) the name and address of a consumer;
(B) an identifier that is not unique to the consumer and that is used by the person solely for the purpose of verifying the identity of the consumer; and
(C) other information pertaining to a consumer that does not identify the relationship or experience of the consumer with respect to a particular creditor or other entity.

*See* 15 U.S.C. § 1681b(c)(2).

§ 1681a(l)(1). Second, the lender may verify "that the consumer continues to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l)(2). Third, the offer may be conditioned on the consumer's furnishing collateral that was pre-established and disclosed to the consumer. *See* 15 U.S.C. § 1681a(l)(3).

## B. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE HER CLAIM IS BASED UPON A MISINTERPRETATION OF SEVENTH CIRCUIT LAW THAT HAS BEEN REPEATEDLY HELD NOT TO SUPPORT LIABILITY UNDER THE FCRA.

The only factual allegation of significance in Plaintiff's complaint is that Corinthian's offer was "excessively vague and totally lacking in terms." Am. Compl. at ¶ 31. Plaintiff's amended complaint cites *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004), presumably, as support for the theory that this allegation supports liability under the FCRA. In fact, this is a gross misinterpretation of *Cole* that has been widely rejected by courts, including the only district court in the First Circuit to consider the issue.

Nothing in the text or the legislative history of the FCRA requires a lender to set forth all of the credit terms in the initial mailer sent to the consumer. *See Murray v. HSBC Auto Finance, Inc.*, No. 05 C 4040, 2006 WL 2861954, at *4 (N.D. Ill. Sept. 27, 2006). Plaintiff's claim that such a requirement exists is based upon a misinterpretation of *Cole*. In *Cole*, the Seventh Circuit considered a number of factors and concluded that a complaint involving a mailer purporting to offer a nominal amount of credit tied to the purchase of an automobile stated a claim for a violation of the FCRA. There, the Seventh Circuit determined that the fact-finder could reasonably conclude that the defendant was improperly pitching the sale of cars rather than offering a legitimate credit product. As the Seventh Circuit subsequently recognized, "*Cole*'s objective was to separate *bona fide* offers of credit from advertisements for products and services…." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 955-56 (7th Cir. 2006). Since

*Cole*, numerous plaintiffs, like the instant plaintiff, have filed lawsuits against lenders claiming that their offers were not "firm offers of credit" simply because the initial mailers failed to set forth all of the credit terms. In essence, these plaintiffs seek to elevate *one* of the factors considered in *Cole* to an absolute requirement of the FCRA.

The notion that the FCRA requires disclosure of all material credit terms in a mailer to constitute a "firm offer of credit" has been roundly rejected by numerous courts. The only district court in the First Circuit known to have addressed the issue stated:

> In circuits other than the Seventh, district courts have declined to tie the concept of value to the disclosure of specific loan details.
> ***
> I agree with the sentiment expressed by Judge Stein in the *Nasca* case: "If Congress believes the statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in the privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute."

*Dixon v. Shamrock Fin. Corp.*, No. 06-11828-RGS, 2007 WL 1170639, at *4, n.4 & n.6 (D. Mass. April 20, 2007) (quoting *Nasca v. J.P. Morgan Chase Bank, N.A.*, No. 06 Civ. 3472 (SHS), 2007 WL 678407, at *4 (S.D.N.Y. March 5, 2007)).

Other district courts outside the Seventh Circuit have similarly held that the disclosure of credit terms is not required to comply with the FCRA. *See Poehl v. Countrywide Home Loans, Inc.*, 464 F. Supp. 2d 882, 886 (E.D. Mo. 2006) ("Congress carefully crafted its definition of 'firm offer' and chose not to require that the lender specify particular loan terms. … If Congress had wanted to require that loan amounts, interest rates, or payback times be specified in a 'firm offer,' it could have done so."); *Klutho v. GE Money Bank*, No. 4:06CV1319 HEA, 2007 WL 162291, at *2 (E.D. Mo. Jan. 17, 2007) (same); *McDonald v. Nelnet, Inc.*, No. 4:06CV1599 CDP, 2007 WL 646133, at *4 (E.D. Mo. Feb. 23, 2007) (same); *Soroka v. JP Morgan Chase & Co.*, No. 05 Civ. 7578(DAB), 2007 WL 895249, at *4 (S.D.N.Y. March 19, 2007) ("As for

Plaintiff's complaint that the offer lacked terms such as the applicable interest rate and repayment period, the FCRA simply does not require that such terms be included in firm offers of credit made pursuant to the statute."); *Nasca v. J.P. Morgan Chase Bank, N.A.*, No. 06 Civ. 3472 (SHS), 2007 WL 678407, at *4 (S.D.N.Y. March 5, 2007) ("Because Congress explicitly required that creditors disclose [any requirement for collateral] for such a solicitation to constitute 'a firm offer of credit,' this Court will not imply that Congress meant to require additional credit terms—such as specific interest rates or amount of credit—in order for a solicitation to constitute a 'firm offer of credit.'"); *Soroka v. Homeowners Loan Corp.*, No. 8:05 CV 2029 T 17MAP, 2006 WL 4031347, at *4 (M.D. Fla. June 12, 2006) ("[T]he Court finds that the omission of the interest rate and term from the face of the offer does not mean that the offer is without value….").

Even district courts within the Seventh Circuit have rejected a credit term disclosure requirement under the FCRA. *See Cavin v. Home Loan Center Inc.*, 469 F. Supp. 2d 561, 569 (N.D. Ill. 2007) ("[W]e do not read *Cole* or *Perry* to require disclosure of every single loan term for an offer to be considered firm."); *Murray v. HSBC Auto Finance, Inc.*, 2006 WL 2861954, at *4 ("[N]othing in the text or legislative history of § 1681n requires HSBC to include the specific terms of the loan.").

For home loans such as the one offered by Corinthian, the Truth in Lending Act ("TILA") requires the disclosure of loan terms after the consumer provides information in response to an offer. The TILA requires that the amount financed, the finance charge, the annual percentage rate, the payment schedule and the total of payments must be disclosed "before consummation, or … not later than three business days *after the creditor receives the consumer's written application*, whichever is earlier." *See* 12 C.F.R. §§ 226.18 & 226.19 (emphasis added).

*See also Soroka v. JP Morgan Chase & Co.*, 2007 WL 895249, at *4 (recognizing the interplay of the timing and disclosure requirements of the TILA and the FCRA, both of which are parts of the Consumer Credit Protection Act). Indeed, as courts have recognized, the precise terms for a home loan cannot be finalized until the consumer supplies information that the lender does not have when the initial mailers are sent. *See Cavin*, 469 F. Supp. 2d at 569 ("[U]nlike a credit card, a mortgage is tailored to the individual consumer depending on such factors as how much he or she wishes to borrow, his or her current income, and the value of the property offered as collateral; all of this information would have to be provided by the individual borrower."). Thus, it makes perfect sense that the FCRA does not require all of the credit terms be provided in the initial mailer.

Plaintiff's allegations do not support a cause of action under the FCRA. At bottom, Plaintiff's claim is that Corinthian violated the FCRA simply because it failed to disclose all of the credit terms in the mailer it sent to Plaintiff. Neither the text of the FCRA nor relevant case law requires such disclosures. Moreover, for home loans, such disclosures are governed by the TILA, which requires disclosures at a point in time after the consumer supplies information specific to his or her circumstances. The failure to provide all credit terms in the initial mailer, therefore, does not state a claim under the FCRA.

**C. PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE CORINTHIAN'S MAILINGS SET FORTH A "FIRM OFFER OF CREDIT" UNDER THE FCRA.**

Courts have generally employed two different tests in considering whether an offer constitutes a "firm offer of credit" under the FCRA. As one court recognized, "Courts deciding whether a particular flyer fits the 'firm offer of credit' exception have struggled to articulate a consistent definition or test." *Poehl*, 464 F. Supp. 2d at 885. The First Circuit has not passed on

this issue. Decisions from courts that have, however, can be separated into two groups. First, a number of courts, including the only district court in the First Circuit known to have addressed the issue, require only that an offer meet the FCRA statutory definition. *See, e.g., Dixon*, 2007 WL 1170639, at *4 ("'[A] court need only determine whether the four corners of the offer satisfy the statutory definition …, and whether the terms are honored when consumers accept.'") (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 956 (7th Cir. 2006)); *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053, 1060 (N.D. Cal. 2006). A number of other courts require both that a mailer meet the FCRA statutory definition and that the offer have "some value." *See, e.g., Poehl*, 464 F. Supp. 2d at 886 (An offer constitutes a "firm offer of credit" "[s]o long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation.").

Corinthian's offer clearly passes muster under either of the tests employed. The statutory-requirements-only test followed in *Dixon* is the superior test. It leaves to Congress the task of creating requirements under the statute that it created. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992) (Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there."). Corinthian's offer plainly complies with the FCRA statutory requirements. Even if the Court goes a step beyond the statutory requirements and conducts a "value" inquiry, Corinthian's offer easily withstands scrutiny. Under either test, Corinthian has made a "firm offer of credit," and Plaintiff's complaint should be dismissed.

**1. Corinthian's mailer met the FCRA statutory requirements.**

A comparison of the FCRA definition of "firm offer of credit" with Corinthian's mailer demonstrates that Corinthian complied precisely with the FCRA requirements:

| **FCRA Definition of "Firm Offer"**<br>**[15 U.S.C. § 1681a(l)]** | **Corinthian's Mailer**<br>**[Exhibit A]** |
|---|---|
| "any offer of credit or insurance" | • "You've been pre-selected for up to $63,450.00 or more!!!"<br>• "Minimum Loan amount in connection with this offer is $25,000."<br>• "Loan amount may not exceed 125% of the value of your home, minus the first mortgage balance" |
| "to a consumer" | • "Dear Betty" |
| "that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer" | • "This 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria." |
| except that the offer may be further conditioned on one or more of the following:<br>(1) consumer meets pre-established specific criteria bearing on credit worthiness;<br>(2) verification that consumer continues to meet the specific criteria bearing on credit worthiness;<br>(3) consumer furnishes any collateral that was required, pre-established, and disclosed in the offer. | • "This credit may not be extended if, after you respond, we find that you do not meet the criteria used to select you for this offer or any applicable criteria bearing on creditworthiness."<br>• "our criteria including providing a lien on your owner-occupied, one-to-four family residence or condominium excluding mobile homes and manufactured housing." |

In addition to the information required by the FCRA, Corinthian's mailer provided other important information that informed Plaintiff that it was offering a legitimate home loan. The mailer explained: "For April 2006, the APR range for second mortgages was 7.576% to 14.919% and loan term for second mortgages was 180 months to 360 months. Your APR and loan term will depend on various factors described in this offer." Ex. A. Additionally, Corinthian's mailer provided a specific example of a home loan using a $35,000.00 loan amount, at an APR of 10.89 percent, for a term of 300 months. *Id*. The mailer also informed Plaintiff that (1) "Final loan approval is subject to verification of acceptable income and credit;" (2) "Origination fees and

closing costs are included in the APR and may vary by state;" (3) "Approval subject to verification of information given at the time of application;" and (4) "Programs will require appraisal and income documentation." *Id*. In addition, Corinthian supplied a toll-free number and invited Plaintiff to "*Call for current information*." *Id.* (emphasis added).

Plaintiff does not allege that Corinthian did not honor the offer set forth in its mailer. The FCRA requires that Corinthian honor its "firm offer of credit" for all consumers who applied and met Corinthian's criteria. *See* 15 U.S.C. § 1681a(l). "However, no allegation is made in the Complaint that [Plaintiff]—or anyone else—had ever responded to [Defendant's mailer] and then been denied credit despite meeting creditworthiness requirements or had been diverted to some other type of business dealing." *Dixon*, 2007 WL 1170639, at *4. "Without an allegation that [Defendant's] offer to extend credit was something other than what it purported to be, the Complaint fails to allege a critical statutory prerequisite of a cause of action under the FCRA." *Id*.

**2. Corinthian's mailer offered something of value and was not a sham or mere solicitation.**

Corinthian's mailer plainly offered a *bone fide* home loan. The mailer informed Plaintiff that Corinthian was offering her a loan for at least $25,000, up to a maximum of 125 percent of the value of her home, minus the first mortgage balance. The mailer also informed Plaintiff that the loan would be secured by a lien on her primary residence. Moreover, the mailer provided an example of a home loan and even gave the range of terms experienced for recently closed loans (April 2006). The rest of the information in the mailer further demonstrated that Corinthian's offer was for a legitimate home loan. Indeed, even Corinthian's name—Corinthian *Mortgage* Corporation d/b/a Southbanc *Mortgage*—evidenced that its purpose in sending Plaintiff the mailer was to offer a home loan.

Courts have previously held that a mailer offering a home loan for more than a nominal amount contained sufficient "value" to constitute a "firm offer of credit." For example, the court in *Poehl* held:

> In this case, the offer is for a home loan of $93,500. While the offer states that the actual loan amount 'may be more or less,' it also states that the $93,500 loan amount is based on an office average of actual loans issued. This average is an indication that the actual loan value will be more than a nominal amount such as one dollar, as the *Cole* defendants urged was sufficient. Although the rest of the terms of the loan are not disclosed on the face of the mailer, a reasonable consumer viewing this mailer would believe that it contains some value because it has offered a minimum amount of money, even to persons who might otherwise have credit problems. This is a real offer even if many of the terms and conditions have not been revealed. I will therefore grant [Defendant's] motion to dismiss.

*Poehl*, 464 F. Supp. 2d at 887.

Corinthian's mailer provides even better information than the one held sufficient in *Poehl*. Where the *Poehl* offer provided merely an "average" loan amount, Corinthian's mailer provided both the *minimum* loan offered—$25,000—and the *maximum* loan offered—125 percent of the value of Plaintiff's home, minus the first mortgage balance. Presumably, Plaintiff had some idea of the value of her home and the balance remaining on her first mortgage and was, therefore, able to calculate the full range that might have been available to her.

By any reasonable measure, Corinthian's mailer offered sufficient value to constitute a "firm offer of credit." Even the minimum amount of $25,000 is, without dispute, quite valuable to the ordinary consumer. *See Klutho*, 2007 WL 162291, at *3 (holding that mailer offering credit of at least $500 "offers something of value"); *Soroka v. JP Morgan Chase & Co.*, 2007 WL 895249, at *5 (holding that a mailer offering a minimum home equity loan of "$15,000 (or $10,000 in MI)" was a valuable offer). Moreover, Corinthian's mailer explained that Plaintiff may have qualified for even more and provided the method by which Plaintiff could have

determined this maximum. In any event, Corinthian's offer had sufficient value to demonstrate that it was a true credit product and not a sham. *See Bonner v. Cortrust Bank, N.A.*, No. 2:05-CV-137 PS, 2006 WL 1980183, at *6 (N.D. Ind. July 12, 2006) ("[W]e must consider the value of the offer only as a means to distinguish between true offers of credit products and mere solicitations.").

Despite Plaintiff's conclusory allegation, nothing contained in Corinthian's mailer suggested that its offer was a sham or mere solicitation.[3] The mailer provided a loan example, actual ranges of terms for recently closed loans, and a variety of other information, all of which clearly notified Plaintiff that Corinthian was offering her a home loan. *See Poehl*, 464 F. Supp. 2d at 886 (noting that consumers generally understand the mortgage lending process). Further, the mailers did not suggest (nor has Plaintiff alleged) that Corinthian was "attempting to sell Plaintiff any other products in conjunction with the offer of credit…." *Soroka v. JP Morgan Chase & Co.*, 2007 WL 895249, at *5. *See also Murray v. GMAC Mortgage Corp.*, 434 F.3d at 955 (Courts must "separate the use of credit data to sell products (forbidden) from the use of credit data to make firm offers of credit (allowed)…."); *Bonner*, 2006 WL 1980183, at *4 ("[I]f the offer is really nothing more than an effort to pump some product—in *Cole* the solicitation was really an effort to sell cars, not credit—then it is not a firm offer of credit."). In short, the only interpretation of Corinthian's mailer is that it contains an offer for a *bone fide* home loan.

Corinthian's offer for a home loan did not inexplicably transform into a sham merely because every detail was not set forth in the mailer. As a number of courts have recognized, providing all of the terms for a *home loan* is not realistic until *after* the consumer provides information in response to the initial mailer. *See Cavin*, 469 F. Supp. 2d at 569 ("[A] mortgage

[3] "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Clorox Co. Puerto Rico*, 228 F.3d at 32 (quoting *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998)).

is tailored to the individual consumer … [based on] information [that] would have to be provided by the individual borrower."); *Soroka v. Homeowners Loan Corp.*, 2006 WL 4031347, at *5 ("[T]he later supplementation of material terms is permissible, given the understanding that the terms of home loans are subject to change based on market conditions, and a means to obtain current information is provided."). Indeed, as indicated in Part B, *supra*, the provisions of the TILA appreciate that a lender must first obtain information from a consumer before it can detail the specific loan terms. *See* 12 C.F.R. §§ 226.18 & 226.19. Thus, the fact that all of the details were not provided in Corinthian's mailer—a circumstance in compliance with the TILA—is hardly evidence that Corinthian's offer for a home loan was a sham.

## V. <u>CONCLUSION</u>

Plaintiff has alleged only that Corinthian's mailer did not set forth all of the detailed credit terms of the home loan that Corinthian was offering. Numerous courts have held that such an allegation alone does not support a claim under the FCRA. Further, Corinthian's mailer complies with the statutory requirements of the FCRA and even passes muster under the "some value" test employed by some courts. For these reasons, Plaintiff's amended complaint fails to state a claim for which relief may be granted and should be dismissed.

Dated: May 22, 2007

DEFENDANT
By its attorneys,

/s/ Patricia K. Rocha
John A. Tarantino, #2586
jtarantino@apslaw.com
Patricia K. Rocha, #2793
procha@apslaw.com
Katy A. Hynes, #6659
khynes@apslaw.com
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
Tel: 401-274-7200
Fax: 401-351-4607

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of May, 2007, I served a true copy of the within Motion and supporting Memorandum of Law **by electronic means (ECF)** on Christopher M. Lefebvre, Esq., P.O. Box 479, Pawtucket, RI 02862.

/s/ Patricia K. Rocha

*418427_1.doc*