**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BETTY J. FARIZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-338-T |
| v. | ) | |
| | ) | |
| CORINTHIAN MORTGAGE CORPORATION d/b/a SOUTHBANC MORTGAGE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS AND/OR FOR JUDGEMNT ON THE PLEADINGS**

## I. INTRODUCTION

Plaintiff, Betty Farizer, ("Plaintiff") filed suit under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") alleging that a pre-screened mortgage loan solicitation sent by Corinthian Mortgage Corporation d/b/a Southbanc Mortgage ("Corinthian") violated the FCRA. (Am. Compl. ¶¶ 27-31). Specifically, Plaintiff alleged that Defendant violated § 1681b by certifying to a consumer reporting agency that a "permissible purpose" existed for causing to be obtained and using information from Plaintiff's "consumer report" in connection with the sending of a solicitation which did not constitute a "firm offer of credit" as defined by § 1681a.

Section 1681b of the FCRA provides that it is permissible to obtain a "consumer report" on a consumer only with the written consent of the consumer or for certain "permissible purposes," such as the extension of a "firm offer of credit."[1]

[1] It is crucial that the "firm offer of credit" regulation be strictly enforced. The potential for serious privacy violations is underscored by recent publicity concerning security breaches at Choicepoint and other repositories of

Defendant Corinthian has moved to dismiss the Amended Complaint claiming that, as a matter of law, it extended a "firm offer of credit" based upon the statutory requirements of the FCRA. As demonstrated below, Corinthian's grounds for dismissal are without merit and the Motion to Dismiss or for Judgment on the Pleadings should be denied in its entirety.

## II. STATEMENT OF FACTS

Plaintiff received a pre-screened mortgage loan solicitation from Defendant. (Am. Compl. ¶ 10; Am. Compl., Exhibit A). Defendant approved or authorized the dissemination of the solicitation. (Am. Compl. ¶ 18). The solicitation stated that the sender had used information from Plaintiff's consumer report in the course of determining to send her the mailer. (Am. Compl, Exhibit A). Defendant had in fact accessed or obtained information from Plaintiff's consumer report. (Am. Compl. ¶¶ 12-13). Plaintiff had not authorized Defendant to access her consumer report. (Am. Compl. ¶¶ 22-23).

The mailing is vague and does not constitute an "offer." The mailing states: 1) "final loan approval is subject to verification or acceptable income and credit"; 2) "Property type may affect maximum loan amount"; 3) "your rates may vary according to your credit history and other factors," 4) "programs will require appraisal and income documentation." (Am. Compl. Exhibit A). There is no guarantee that Plaintiff has actually been approved for anything, only that she is "pre-selected," subject to whatever unknown limitations Defendant chooses to impose. (Am.

---

credit information. These firms perform "prescreening" services for companies that make purported "firm offers of credit." See M. Frank, "Privacy Laws and Data Broker Services," Congressional Testimony, May 10, 2005, Federal Document Clearing House ("data brokers" that perform prescreening services are inviting targets for identity thieves).

Compl. Exhibit A).

## III. THE FAIR CREDIT REPORTING ACT

The FCRA was enacted in order to guarantee that credit reporting agencies—and, necessarily, those who use information provided by credit reporting agencies—"exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a)(4). Accordingly, the statute is designed to protect the privacy of "consumer reports," including "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. §§1681(b) and 1681a(d). See also Zeller v. Samia, 758 F. Supp. 775, 779 (D. Mass. 1991).

The statute accomplishes this purpose by limiting the circumstances in which consumer credit reports can be disclosed to persons other than the consumer. See Smith v. Bob Smith Chevrolet, Inc., 275 F.Supp.2d 808, 815 (W.D. Ky. 2003) ("The FCRA identifies a limited set of 'permissible purposes' for obtaining and using a consumer report"). As another court in this District has recognized:

> The purpose of the Act is to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

New Palm Gardens, Inc. V. Bentley, 82-1361, 1983 U.S. Dist. LEXIS 14710 (D. Mass. Aug. 11, 1983).

The FCRA was enacted by Congress to ensure fairness, accuracy and privacy in the creation and reporting of Consumer Reports. 15 U.S.C. § 1681. To this end, Congress determined that Consumer Reports may only be released by a Consumer Reporting Agency under certain circumstances. 15 U.S.C. § 1681b. Veno v. AT&T Corp., 297 F. Supp. 2d 379, 383 (D. Mass. 2003)

Generally, a voluntary consumer relationship must exist between the party requesting the report and the subject of the report in order for the request to be legitimate. See Daley v. Haddonfield Lumber, 943 F.Supp. 464, 468 (D. N.J. 1996) ("In this circuit, the absence of a consumer relationship between the requesting party and the subject of the credit report requires the court to find that the requesting party did not have a permissible purpose to obtain the report. ... In other words, a consumer relationship between the requesting party and the subject of the credit report is a prerequisite to finding that the requesting party has a legal right to the information").

There are, however, limited exceptions to this general rule. One exception allows prospective lenders to obtain the credit records of non-customers without their consent for the purpose of making them a "firm offer of credit". 15 U.S.C. § 1681b(c)(1)(B). The theory behind this exception is that the benefit consumers get from receiving firm offers of credit justifies the invasion of their privacy. Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004); Trans Union Corp. v. FTC, 81 F.3d 228, 234 (D.C. Cir. 1996) (statutory policy that "information about a consumer ... be kept private except under circumstances in which the consumer could be expected to wish otherwise or, by entering into some relationship with a business, could be said

to implicitly waive the Act's privacy to help further that relationship").

In this case, the sole purported justification for Defendant's invasion of Plaintiff's privacy is that the mailer that Defendant sent to Plaintiff purportedly constituted a "firm offer of credit" within the meaning of FCRA. But simply calling a mass mailer a "firm offer of credit" does not make it one. To make sure that the firm offer of credit exception does not swallow the general rule in favor of consumer privacy, limits have been placed on what constitutes a firm offer of credit within the meaning of the statute.

First, the purported "firm offer of credit" has to be a real offer and not a mere solicitation. Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004); Trans Union Corp. v. FTC, 81 F.3d 228, 234 (D.C. Cir. 1996). See also Hernandez v. Chase Bank USA, N.A., 429 F.Supp.2d 983, 987 (N.D. Ill. 2006) ("If, in context, the court finds the 'offer' to be 'a guise for solicitation rather than a legitimate credit product,' then the 'offer' is not a 'firm offer of credit' under the FCRA").

Second, the alleged "firm offer of credit" has to offer something of value to the consumer sufficient to justify the invasion of the consumer's privacy. See Hyde v. RDA, Inc., 389 F.Supp.2d 658 (D. Md. 2005):

> If the phrase "firm offer of credit" does not require providing an offer with value, then for practical purposes there is no limit on a credit agency's ability to furnish credit reports without prior authorization. This would clearly upset the statutory scheme of the FCRA, which "makes clear that a 'firm offer' must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy."

Id. at 666.

Both conditions must be satisfied to make a mass mailer a "firm offer of credit" within the meaning of FCRA. In this case, neither condition has been satisfied. The mailer that

Defendant sent to Plaintiff does not constitute an "offer" and, even if it did, it does not have sufficient value to justify the invasion of her privacy.

## IV. THE MAILING MUST CONTAIN AN OFFER WITH VALUE

Corinthian moves to dismiss the Amended Complaint based upon an assertion that the pre-screened solicitation met the "firm offer of credit" statutory definition of 15 U.S.C. § 1681(a)(1). As noted above, the FCRA is a consumer protection statute, designed to protect consumer credit information. As such, there are two crucial components to a "firm offer of credit": 1) an offer 2) which provides actual value to the consumer.

### A. THE CIRCULAR SENT TO PLAINTIFF DOES NOT CONSTITUTE AN OFFER

As discussed above, the FCRA does not give prospective lenders carte blanche to access the credit records of potential customers. Absent consent, the prospective lender can only obtain a credit report for the purpose of making a "firm offer of credit" to the consumer.

The term is defined in the statute:

> The term "firm offer of credit or insurance means any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer ....

15 U.S.C. § 1681a(l). The statute goes on to provide that the offer may be further conditioned on the consumer satisfying criteria established before selection of the consumer for the offer, verification that the consumer continues to satisfy those criteria and the consumer furnishing any collateral that was established as a requirement before the selection of the consumer for the offer. See 1681a(l).

Thus, lenders may place conditions on firm offers of credit to the extent authorized by the statute. But apart from the statutorily authorized conditions, the communication to the consumer has to constitute an "offer", not a mere advertisement.

The statute does not define the word "offer". As the term is generally understood, in this Circuit and elsewhere, an "offer" is a set of terms that can be immediately accepted, in that the bargain could be concluded on terms that were clear to both parties. Restatement (2d) of Contracts, §§24, 24 reptr. cmt. a, 26, and 26 cmt. b (1981) (emphasis added); see Black's Law Dictionary at 976 (5th ed. 1979) (same definition as §24). See Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc., 06-2199, 2007 U.S. App. LEXIS 7808 (3d Cir. 2007)(citing § 24); Boomer v. AT&T Corp., 309 F.3d 404, 414-415 (7th Cir. 2002)(same); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany County, 369 F.3d 91, 95 (2d Cir. 2004)(same); Dean Foods Co. v. Brancel, 187 F.3d 609, 617-618 (7th Cir. 1999) (citing §26); and Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1048 (Fed.Cir. 2001) (same).

As held by one district court in denying a motion to dismiss which focused on the statutory definition:

> The "conditions" articulated in the statutory definition of "firm offer of credit," however, go to the issue of whether the offer is "firm" rather than the substance of the offer itself. Under the statutory definition, an offer can be "firm" even though it is conditioned upon preestablished criteria. However, the statutory definition does not explain what the "offer of credit" must provide (i.e., what it must "offer" to the potential borrower."
>
> A court should also consider "the entire offer and the effect of all the material conditions that comprise the credit product in question." Id. at 727-28. If, in context, the court finds the "offer" to be "a guise for solicitation rather than a legitimate credit product," then the "offer" is not a "firm offer of credit" under the FCRA. Id. at 728.

Hernandez v. Chase Bank USA, N.A., supra, at 983.

But "[u]nder accepted canons of construction, legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning." In re Reading Co., 900 F.Supp. 738, 748 (E.D. Pa. 1995). Consequently, the statute's use of the word "offer" means that "a firm offer of credit" must constitute a legal "offer" as the word "offer" is commonly understood.

The word "offer" has an accepted legal meaning. An offer is the penultimate step before a contract. As one Court has said: "An offer is 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" Bergquist Co. v. Sunroc Corp., 777 F.Supp. 1236, 1248 (E.D. Pa. 1991), quoting in part from Restatement (Second) Contracts, § 24 (1979).

One of the prime requirements for a legal contract is that its terms be certain and definite. See Baer v. Chase, 392 F.3d 609, 619 (3rd Cir. 2004) ("'An agreement so deficient in the specification of its essential terms that the performance of each party cannot be ascertained with reasonable certainty is not a contract, and clearly is not an enforceable one'"); Aircraft Guar. Corp. v. Strato-Lift, Inc., 103 F.Supp.2d 830, 836 (E.D. Pa. 2000) ("If a court is unable, due to indefiniteness or incompleteness in contracting, to determine whether the contract has been performed, then it must find that no contract existed in the first place").

Correspondingly, one of the requirements for a legal "offer" is that its terms be sufficiently definite that if the other party responds by accepting a court will be able to ascertain and enforce the terms of the contract. See Beaver Valley Alloy Foundry Co. v. Therma-Fab, Inc.,

814 A.2d 217, 222 (Pa. Super. 2002) ("no offer exists where purported offer is unclear on essential terms of contract") (citing Columbian Rope Co. v. Rinek Cordage Co., 314 Pa. Super. 585, 461 A.2d 312 (Pa.Super. 1983). As the Restatement (Second) of Contracts states:

> **Certainty**
>
> **(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.**
>
> **(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.**
>
> **(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.**

Restatement (Second) Contracts, § 33 (1979).

It is for this reason -- the requirement of certainty -- that advertisements and price quotations are generally not considered offers. See Moldflow Corp. v. Simcon, Inc., 296 F. Supp. 2d 34, 44 (D. Mass. 2003); Restatement (Second) Contracts, § 33, comment c ("Incompleteness of terms is one of the principal reasons why advertisements and price quotations are ordinarily not interpreted as offers").

Judged by these standards, the mailer that Defendant sent to Plaintiff was an advertisement. It was not an offer. The mailer did not tell Plaintiff what her interest rate or loan amount would be. On the contrary, the mailer stated that the "your rates may vary according to your credit history and other factors." (Am. Compl. Ex. A). Essentially, Defendant used consumer report information to inform the recipients that they would make them whatever loan for which they could be qualified. However, any mortgage lender in the country will make

anyone an offer to make them any loan for which they could be qualified.

The cases cited in the Defendant's brief are inapposite. They discuss whether the offers in question provided sufficient value to the consumer to justify the invasion of privacy. They did not consider whether the purported offers were in fact legal offers. Also, the cases relied upon by Defendant seem animated by a concern that the sufficient value inquiry is not specifically mandated by the statute. By contrast, the FCRA expressly uses the word "offer" so that an analysis of whether purported offers are in fact offers simply requires courts to enforce the statute as it is written, a traditionally and generally accepted judicial role.

These supposed terms are far too indefinite and incomplete to constitute an offer. See also Bourque v. FDIC, 42 F.3d 704, 709 (1st Cir. 1994) (preliminary negotiations are generally not deemed offers). And since there was no "offer" there was no "firm offer of credit" and thus no justification for the Defendant's conduct. For this reason alone, the Motion to Dismiss should be denied. See Presbytery of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1465 (3rd Cir. 1994) ("'The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief'") (citing Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988), cert. denied; Temple Univ. Hosp., Inc. v. Group Health, Inc., 413 F.Supp.2d 420, 423 (E.D. Pa. 2005) ("A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff").

Under 15 U.S.C. §§1681b(c)(1)(B), it is permissible to obtain a credit report only when making a "firm offer of credit or insurance." The requester must certify to the consumer

reporting agency that a permissible purpose exists. 15 U.S.C. §1681b(f). Merchants are not entitled to obtain credit information for the purpose of targeting unsolicited direct mail pieces, or sales pitches, to consumers. Cole v. U.S. Capital, Inc., 389 F.3d 719, 727 (7th Cir. 2004); Trans Union v. FTC, 267 F.3d 1138, 1142 (D.C. Cir. 2001)(stating that "Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalogs and sales pitches.")

The Seventh Circuit has also held that in order to decide whether a defendant has complied with the "firm offer of credit" requirement in the FCRA, "a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in Cole), and whether the terms are honored when consumers accept." Murray v. GMAC Mortgage, 434 F. 3d 948, 956 (7th Cir. 2005).

As noted by several courts, the FCRA explicitly serves as a consumer protection statute. "'In the FCRA, Congress has recognized the crucial role that consumer reporting agencies play in collecting and transmitting consumer credit information, and the detrimental effects inaccurate information can visit upon both the individual consumer and the nation's economy as a whole.'" Miller v. CoreStar Fin. Group of Pa, Inc., Civil Action No. 05-5133, 2006 U.S. Dist. LEXIS 45323 (E.D. Pa. June 29, 2006)(citing Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996). See also Murray v. Sunrise Chevrolet, Inc., 441 F. Supp. 2d 940, 946 (N.D. Ill. 2006)(citing 15 U.S.C. § 1681(a)(4)("[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"). The "FCRA requires that courts distinguish between those mass mailings that

simply seek to entice new customers using sales pitches, and those firm offers that provide something of value in exchange for infringing on consumers' privacy." Murray v. GMAC Mortgage, 05 C 1229, __ F. Supp. 2d __, 2007 U.S. Dist. LEXIS 26726 at *29, 33 (N.D. Ill. Apr. 10, 2007).

### B. THERE IS NO VALUE IN THE MAILING

In addition to scrutinizing a mailer for an actual "offer," "a court must consider the entire offer and the effect of all the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit" Perry v. First Nat'l Bank, 459 F.3d 816, 824 (7th Cir. 2006)(citing Cole, 389 F.3d at 727-28; Murray v. GMAC Mortgage Corp., supra, at 955-56 (warning against "a sham offer used to pitch a product rather than extend credit")).

This process starts with an evaluation of the underlying loan or line of credit, and asks the court to consider whether it has independent worth to the consumer, or whether it is so valueless that it can only be an inducement toward some other end. Murray v. GMAC Mortgage Corp., supra, 2007 U.S. Dist. LEXIS 26726 at *29, 33.

However, the ultimate value of the product is only one factor in considering the value of the offer itself. As the Seventh Circuit summarized its prior holding in Cole, the offer there was deemed a sham in part because the underlying line of credit was essentially valueless, but also because "it was not clear that credit approval was guaranteed," and "the precise rate of credit and other material terms were not included in the solicitation." Perry, supra, 459 F.3d at 824 (citing

Cole, 389 F.3d at 728). These additional factors must provide some independent value, otherwise the recipient of pre-screened directed mail -- who has given up a modicum privacy through the use of his or her credit report -- is treated no better than a non-recipient consumer; Cole demands that the former be placed in a better position than the latter. "From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation." Cole, supra, 389 F.3d at 726-27. Murray v. GMAC Mortgage, supra, 2007 U.S. Dist. LEXIS 26726 at *29, 33 (granting class summary judgment on firm offer of credit claim).

At the heart of it, the value requirement is essential because a contrary holding would:

> eviscerate[] the explicit statutory purpose of protecting consumer data and privacy. See 15 U.S.C. § 1681(a)(4). Indeed, such a definition would permit anyone to gain access to a sea of sensitive consumer information simply by offering some nominal amount of guaranteed credit. The statutory scheme of the FCRA makes clear that a "firm offer" must have sufficient value for the consumer to justify the absence of the statutory protection of his privacy. A definition of "firm offer of credit" that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation. It is clear that Congress did not intend to allow access to consumer credit information for catalogs and sales pitches.

Cole, supra, 389 F.3d at 726-27 (emphasis added), citing Trans Union Corp. v. FTC, 267 F.3d 1138 (D.C. Cir. 2001).

This value requirement was recognized by the Federal Reserve Board, in its Report to Congress on Further Restrictions on Unsolicited Written Offers of Credit and Insurance as early as December 2004. The Board noted that the inherent value in pre-screened solicitations to a consumer was that they:

> reduce search costs by providing ... ready information about product availability and pricing tailored more closely to their financial experiences and needs. Such screening also increases the likelihood that consumers responding to such solicitations qualify for the product or service being offered and thereby reduces the possibility that the consumer will be wasting his or her time and effort responding to a mailing.

(Board of Governors of the Federal Reserve System, Report to Congress on Further Restrictions on Unsolicited Written Offers of Credit & Insurance (Dec. 2004)). The Board continued, "[w]hen consumers do review the prescreened solicitations, they are most interested in the pricing information. The widespread availability of such pricing and product information contained in a prescreened offer helps to make markets for these products more competitive, an advantage that benefits all consumers." (Id. at 5). Finally, the Board also mandated that "[t]hose sending the prescreened solicitations must tailor the offerings to the actual conditions of recipients because they must be 'firm offers of credit.'" (Id. at 47).

Here, the mailer contained no independent value apart from the indication that a mortgage loan was available. The mailer stated that the "[y]our rates may vary according to your credit history and other factors." (Am. Compl. Ex. A). The mailer contained absolutely no specific terms which were being offered to the Plaintiff, such as an interest rate or range of interest rates, amount of the loan, term of the loan, underwriting guidelines, or down payment. The failure of Defendant to include any pricing information, whatsoever, in the mailing, prevents consumers from obtaining what the Federal Reserve Board has deemed to be the most important (and valuable) benefit of prescreening. See Bonner et al. v. Home123 Corp. et al., supra, 2007 U.S. Dist. LEXIS 18006, at *20.

Defendant states that the minimum loan amount is $25,000.00. However, this does not

mean that Plaintiff was approved for $25,000.00, but only that the smallest loan Defendant would make was $25,000.00. Defendant also cites to the vague and undefined material conditions contained in fine print. However, there is no substance to the material conditions contained within the mailer. Rather, the mailer makes reference to some of the material conditions (i.e. income verification) but fails to specifically spell out what these terms are. Without such information, the recipient cannot determine whether the offer is of value.

It is undisputed that the mailer does not state the amount of credit Plaintiff qualified for or any interest rate that would apply to Plaintiff. It is clear that Plaintiff must meet a myriad of conditions in order to qualify for the loan. The mailer directs the recipient to call to determine the specific terms. Such a mailer is nothing more than a solicitation for business, just like any other direct mail piece. Other criteria critical to the determination of whether the mailer was a "firm offer of credit" include, whether any consumers applied for or actually received the credit, if no or only a minimal number of consumers applied for and got the credit, why not, and was the credit offer so trivial or were there so many conditions that it was not meaningful? Cole, 389 F. 3d at 728. There is nothing in the record as to any of the above issues.

Another important factor for which discovery is required is whether Defendant treated persons responding to a pre-screened offer of credit any differently than someone who just showed up at the dealership from off of the street. See Murray v. GMAC Mortg. Corp., supra, 2007 U.S. Dist. LEXIS 26726, at *30.

The face of the mailer suggests there is no distinction. The mailer informs the consumer to call in to obtain their pre-approval amount. Presumably, this step also requires the consumer

to authorize Corinthian to access their complete credit report. As noted by one court, if consumers are required to authorize their credit to be checked each time they receive a circular like Defendant's, in order to compare the various loan products and rates, which is a stated goal of the FCRA, "this burden is exacerbated because 'credit records contain data on inquiries made about an individual's credit circumstances.'" Bonner v. Home123 Corp., supra, 2007 U.S. Dist. LEXIS 18006, at *29. Such inquiries, which indicate that the consumer is seeking additional credit, can negatively impact a consumer's FICO score. Id.[2]

Finally, the mailer contains an "Example" which provides estimated terms for a $25,000 loan. However, the estimated terms were merely a sample, not directed toward the Plaintiff. As one district court has noted in finding that a mailing was not a firm offer of credit, a "sample savings worksheet (similar to the "example transaction" here) is simply that – a sample. It has no bearing on the type of loan or its terms that a recipient of the mailing could obtain." Bonner et al. v. Home 123 et al., supra, at *24. Another district court recently disregarded a "hypothetical mortgage" table which was in a mailing as without value. Murray v. GMAC Mortgage, supra, 2007 U.S. Dist. LEXIS 26726 at *29, 33.

## V. PLAINTIFF STATES A CLAIM FOR RELIEF UNDER 15 U.S.C. § 1681b

---

2 A consumer authorized inquiry results in a non-promotional, hard inquiry entry on the consumer's "consumer report" which will remain on the "consumer report" for two years and will impact a consumer's FICO score for the next twelve months. (Understanding Your FICO® Score at 13, 2000-2005 Fair Isaac Corporation, available at, http://www.myfico.com/Downloads/Brochures.aspx). Approximately 10% of a consumer's FICO score is based on "New Credit," which takes into account the number of recent requests for credit a consumer has made. (Id.). Each credit inquiry can lower a consumer's credit score by five points. (Id. at 15). Inquiries can have a greater impact if one has fewer accounts or a short credit history – which is a general characteristic of sub-prime borrowers. (Id.). Large numbers of inquiries also convey greater credit risk to potential creditors: Consumers with six inquiries or more on their credit reports may be treated as being up to eight times more likely to declare bankruptcy than people with no inquiries on their reports. (Id.).

The lack of such terms and the highly conditional language throughout the mailing are fatal to Defendant's Motion to Dismiss. There is a plethora of additional case law which supports Plaintiff's allegations as stating a claim upon which relief may be granted. Murray v. Flexpoint Funding Corp., 05 C 1253, 2005 U.S. Dist. LEXIS 12593, at *4 (N.D. Ill. June 17, 2005)("I cannot say as a matter of law that the flyer met that standard. It is not clear from the face of the flyer what, exactly, the offer is." See Grace v. Z Frank LLC, 06 C 1063, 2006 U.S. Dist. LEXIS 93068 (N.D. Ill. Dec. 20, 2006); Hernandez, supra; Hyde v. RDA, Inc., 389 F. Supp. 2d 658, 666 (D. Md. 2005); Asbury v. People's Choice Home Loan, Inc., 05 C 5483, 2006 U.S. Dist. LEXIS 6619 (N.D. Ill. Feb. 15, 2006)(holding that the precise rate of interest is among the more important terms necessary to a "firm offer of credit"); Murray v. American International Group, Inc., 05 C 3881, 2006 U.S. Dist LEXIS 6985 (N.D. Ill. Feb. 23, 2006)(holding that courts must look to the terms of the offer in determining whether a "firm offer of credit" was extended); Sampson v. Ridge Chrysler/Plymouth, LLC, 03 C 1396, 2005 U.S. Dist. LEXIS 40773, at *2 (N.D. Ill. Jan. 13, 2005)(stating that a firm offer of credit can only be shown only a motion for summary judgment and not on the motion to dismiss); Wanek v. C.M.A. Mortgage, Inc., 05 C 4775, 2005 U.S. Dist. LEXIS 40667 (N.D. Ill. Dec. 12, 2005)(holding that because the mailing did not specify a precise interest rate or repayment period, the Court could not find, on a motion to dismiss, that the mailing constituted a "firm offer of credit"); Murray v. Sunrise Chevrolet Inc., 04 C 7668, 2005 U.S. Dist. LEXIS 20397, at *6-9 (N.D. Ill. Sept. 15, 2005)("missing terms may render it impossible for a court to determine whether an offer has value... without these terms, this Court cannot determine whether this offer has value"); Simpson v. Juniper Bank, 06 C

665, 2007 U.S. Dist. LEXIS 9425 (N.D.Ill. Feb. 8, 2007); and Johnson v. Juniper Bank, 06-cv-013, 2006 U.S. Dist. LEXIS 93214 (E.D.Wis. Aug. 29, 2006).

## VI. DEFENDANT'S AUTHORITIES ARE READILY DISTINGUISHABLE

The majority of the cases which Defendant relies upon in support of its Motion to Dismiss are factually distinguishable. The other cases read out the term "offer" in the requirement and disregarded the Federal Reserve Board's requirement that consumers use such pre-screened offers to comparison shop.

For example, McDonald v. Nelnet, Inc., 4:06-cv-1599, 2007 U.S. Dist. LEXIS 12608, at *12-13 (E.D. Mo. Feb. 23, 2007) involved an offer for student loan consolidation. While the court granted a Motion to Dismiss, the underlying rationale was that "unlike most consumer lenders offering credit cards, automobile credit, home equity loans and other types of credit who are essentially free to establish terms and conditions, federal student loan consolidators have no discretion to set credit terms given Congressional regulation of the industry." Nelnet, at *13-14. The court based its ruling on the fact that the Higher Education Action of 1965 and the regulations enacted pursuant thereto dictate in minute detail the precise terms that a loan consolidator can offer to a borrower.

Additionally, in Klutho v. GE Money Bank, 4:06-cv-1319, 2007 U.S. Dist. LEXIS 3373, at *8-9 (E.D. Mo. Jan. 17, 2007) the court found that the letter included the least amount of credit that is available to the consumer, i.e., $500, a range of interest rates and default rate, and numerous other terms and specifications which advised the consumer of other conditions of the offer and consequences for late payments and return check fees.

In Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882, 887 (E.D. Mo. 2006), the Court found that the mailing offered value because it was for a home loan of $93,500 which was actually based on an office average of actual loans issued in the area. Notably, the very same day, in Klutho v. Home Loan Center, Inc., 4:06-cv-928, 2006 U.S. Dist. LEXIS 79759, at *14-15 (E.D.Mo. Nov. 1, 2006), the same Judge, denied a motion to dismiss and stated that "[t]elling Klutho that he has been pre-approved for some kind of home loan, in some amount, is of no more value than the car loan offer in Cole: for all Klutho could tell from the mailing, Home Loan Center might be offering him a loan of one dollar or some other nominal value."

In Cavin et al. v. Home Loan Center, 469 F.2d 561, 2007 U.S. Dist. LEXIS 2713 at *21 (N.D. Ill. 2007)(appeal pending), the district court found a mailer was a firm offer of credit, in part because:

> The mailers indicate that the offer is for an adjustable-rate mortgage with a 1% interest payment option for a fixed period. The mailers also provide a sample payment chart, identify the basis for calculating interest (a margin plus a specified Treasury index), provide the length of the loan (30 years), indicate that rates may change after the first 30 days, disclose that deferred interest may accrue if a borrower chooses the minimum payment option, and indicate what additional information would be needed (income, debt analysis, and property appraisal) to obtain a loan.

As shown, each of the mailers above stand in marked contrast to the mailer sent to Plaintiff and stated what was being offered with far greater specificity to allow the recipient to make a value determination.

Finally, in Nasca v. J.P. Morgan Chase Bank, N.A., 03 Civ. 3472, 2007 U.S. Dist. LEXIS 15629 (S.D.N.Y. Mar. 5, 2007), Soroka v. JP Morgan Chase & Co., 05 Civ. 7578, 2007 WL 895249 (S.D.N.Y. Mar. 19, 2007), and Dixon v. Shamrock Financial Corp., 06-11828, 2007 U.S.

Dist. LEXIS 29335 (D. Mass. Apr. 20, 2007)(notice of appeal filed) the district courts expressly declined to impose a requirement that a pre-screened mailer contain an offer or value to the consumer. These decisions are outliers, as even the courts which have granted motions to dismiss have required that the mailer offer value. Those courts have just differed in their view as to what constitutes "value."

In the end, Defendant's Motion to Dismiss must be denied because there are factual issues as to whether there was an offer, which offered value to the recipient.

## VII. CONCLUSION

For the reasons stated above, this Court should deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

/s/ Christopher M. Lefebvre
Christopher M. Lefebvre
CLAUDE F. LEFEBVRE AND
CHRISTOPHER M. LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860

P.O. Box 479 (Mailing address)
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (fax)

## CERTIFICATE OF SERVICE

I, Christopher M. Lefebvre, hereby certify that on June 1, 2007, a copy of the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** was filed electronically. Notice of this filing will be sent to the following persons by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

John A. Tarantino jtarantino@apslaw.com, dhumm@apslaw.com

/s/ Christopher M. Lefebvre
Christopher M. Lefebvre